## IN THE UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARRISON CAPEL, <br><br> BROOKE NORMAN, and <br><br> The ESTATE OF THOMAS DANIEL CAPEL, <br><br>       Plaintiffs, <br><br> v. <br><br> LAURA CAPEL, <br><br>       Defendant. | **COMPLAINT** <br><br> Civil No. 4:18-cv-918 <br><br> Judge Brann <br><br> (**JURY DEMANDED**) |

**Baker & McKenzie LLP**
*/s/ Kathryn Rimpfel*
Kathryn Rimpfel (PA319238)
Teddy Baldwin (DC973850; *pro hac vice*
    application forthcoming)
Graham Cronogue (DC1044036; *pro hac vice*
    application forthcoming)
815 Connecticut Ave, NW
Washington, DC 20006
Phone: (202) 452-7000
Fax: (202) 452-7074
Kathryn.Rimpfel@bakermckenzie.com
Teddy.Baldwin@bakermckenzie.com
Graham.Cronogue@bakermckenzie.com
*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

DISCUSSION ................................................................................................................ 4

I.  The Motion to Dismiss Fails To Take the Facts in the Light Most Favorable to the Moving Party ................................................................................................ 4

II.  Plaintiffs Have Stated a Cause of Action for Conversion ....................................... 8

III.  Plaintiffs Have Stated a Cause of Action for Interference with Prospective Economic Advantage and/or Intentional Interference with Contractual Relations ........................................................................................................................ 9

IV.  Plaintiffs Have Stated a Cause of Action for Fraud ............................................. 10

V.  Plaintiffs Have Stated A Cause of Action for Negligent Misrepresentation ........ 12

VI.  Plaintiffs Have Stated  A Cause of Action for Defamation ................................... 12

VII.  Plaintiffs Have Stated a Claim for Intentional Infliction of Emotional Distress  12

VIII.  Defendant Asks for the Wrong form of Relief ...................................................... 13

IX.  Defendant's *Colorado River* Doctrine Argument has No Merit ............................ 14

A.  Defendants Fails to Show Parallel Cases ................................................. 15

B.  Even if Defendant met her burden of showing parallel cases, she cannot establish "extraordinary circumstances" under the six-factors ........................................... 16

(1) *In rem* jurisdiction over property ...................................................... 17

(2) The inconvenience of the federal forum ............................................. 17

(3) The desirability of avoiding piecemeal litigation; ............................. 17

(4) The order in which jurisdiction was obtained .................................... 18

(5) Whether federal or state law controls ................................................ 18

(6) Whether the state court will adequately protect the interests of the parties. 19

**X.**      **Defendant's Half-Hearted Request for a Stay Should Be Denied** ........................ **19**

**XI.**     **Defendant's Efforts to Avoid Suit by the Estate Are Meritless** ........................... **19**

**CONCLUSION** ...................................................................................................................... **20**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Beascoechea v. Sverdrup & Parcel & Assocs., Inc.*,
    486 F. Supp. 169 (E.D. Pa. 1980) ...........................................................................9, 10, 14, 15

*In re: Carbon Black*,
    2005 U.S. Dist. LEXIS 660, 2005 WL 102966 ........................................................................8

*Colorado River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976)..............................................................................................17, 18, 22, 23

*Fuller v. Insys Therapeutics, Inc.*,
    2018 U.S. Dist. LEXIS 18431 (D.N.J. Jan. 19, 2018), *adopted sub nom*, 2018
    U.S. Dist. LEXIS 18491 (D.N.J., Feb. 5, 2018) ...............................................................19, 20

*Golden Gate Nat'l Senior Care, LLC v. Minich*,
    629 Fed. Appx. 348 (3d Cir. Oct. 16, 2015) .............................................................18, 19, 23

*Greg Welteroth Holding, Inc. v. Alejo Mo Sun*,
    2013 U.S. Dist. LEXIS 194143 (M.D. Pa. Dec. 13, 2013), *adopted by sub
    nom*, 2014 U.S. Dist. LEXIS 194487 (M.D. Pa., Mar. 18, 2014)................................... *passim*

*Harris v. Pernsley*,
    755 F.2d 338 (3d Cir. 1985)....................................................................................................19

*Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*,
    507 U.S. 163, 113 S. Ct. 1160 (1993).......................................................................................9

*Lovejoy v. Georgeff*,
    303 A.2d 501 (1973) ...............................................................................................................25

*McGuire v. Erie Lackawanna Railway Co.*,
    385 A.2d 466 (1978) ...............................................................................................................25

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton Inc.*,
    571 F. 3d 299 (3d Cir. 2009)............................................................................................18, 21

*Pennoyer v. Marriott Hotel Servs.*,
    324 F. Supp. 2d 614 (E.D. Pa. 2004) ......................................................................................16

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
    356 F. Supp. 2d 484 (M.D. Pa. 2005) .......................................................................................8

*Ryan v. Johnson*,
    115 F.3d 193 (3d Cir. 1997).....................................................................................................22

*Swierkiewicz v. Sorema N.A.*,
　　534 U.S. 506, 122 S. Ct. 992 (2002) .........................................................................9

*Wilkes-Barre General Hospital v. Lesho*,
　　62 Pa. Commw. 222 (Pa. Com'w. 1981) ..........................................................24, 25

*Yang v. Tsui*,
　　416 F.3d 199 (3d Cir. 2005) ................................................................................19

## Other Authorities

FRCP 8 ........................................................................................................................12

FRCP 12 ........................................................................................................................6

Plaintiffs Brooke Norman, the Estate of Thomas Dan Capel, and Harrison Capel file this memorandum of points and authorities in opposition to Defendant Laura Capel's ("Defendant") Motion to Dismiss or Stay the Proceedings.

In short, Defendant completely misses the point. She posits that that "gravamen of the instant Complaint is that [Defendant] is misrepresenting that she is Mr. Capel's surviving spouse," Pl. Br. at 2, and from there tries to argue that this matter is best resolved by some other court. That is wrong. This case does not turn on who is Dan Capel's legal "surviving spouse" and cannot be decided on those grounds. Whether the Defendant never divorced or not is not dispositive to any of the claims. Rather, this case is about the fraudulent statements and other misconduct stemming from the <u>pre-divorce</u> <u>Separation Agreement</u>—a contract that this Court is well-equipped to enforce. The core legal issue, therefore, is whether Defendant lied to Plaintiffs about waiving her <u>legal rights</u> associated with marriage in order to obtain money under false pretense. And, because Defendant waived these rights in the binding <u>Separation Agreement</u>, the answer to that question will not turn on whether a state court finds that Defendant actually divorced Thomas Capel.

Lest there be any doubt that the existence (or non-existence) of a <u>divorce has no impact whatsoever on the Defendant's rights, duties, and liability</u>, the Separation Agreement itself provides the following:

> This Agreement shall not be merged in [a divorce] Decree, but shall <u>in all respects survive the same and be forever binding and conclusive on the parties.</u>

Applying the terms of the Separation Agreement, whether or not Defendant lied to Plaintiffs Dan Capel and Brooke Norman about obtaining a divorce will not change the central issue—

Defendant violated and engaged in fraud with respect to the <u>Separation Agreement</u>.[1]  Thus, even assuming Defendant was Thomas Capel's "surviving spouse" at his death, Defendant engaged in actionable misconduct that gives rise to these claims by lying about her <u>separated status</u> in order to steal money from Plaintiffs <u>pursuant to the Separation Agreement</u>.  Because Defendant's motion focuses myopically on the unimportant question of "divorce" and fails to address the indisputable (and dispositive) fact that it was through the <u>Separation Agreement</u> that Defendant executed her fraud and other misdeeds, the motion should be denied on those grounds alone.

However, there are more errors.  Most notably, Defendant's Rule 12(b)(6) arguments apply the wrong standard.  Defendant admits that she must take all factual allegations as true and all inferences in the light most favorable to Plaintiff.  But she does not do that.  In the main, Defendant's factual recitations are unsupported by the Complaint and, in some cases, <u>they are directly contrary it</u>.  For instance, the Complaint alleges that Brooke Norman made payments to Defendant and that Defendant was aware of these payments as well as the reason for them, yet Defendant counters—without citing any part of the Complaint—with her own version of facts, *i.e.* that Defendant did not know and that the payments did not actually come from Ms. Norman. These sorts of credibility issues could not be decided at the motion for summary judgment stage, and they are certainly not appropriate for a Rule 12(b)(6).  Applying the proper standard, it is clear that Plaintiffs have provided factual allegations that—if proven at a *later date*—would state a plausible claim for relief.

Further, Defendant ignores that the majority of these claims are governed by FRCP 8(a)'s notice pleading standard.  While Defendant apparently would like pinpoint precision in each and

---

[1] There are also instances of breach of contract, defamation and other misconduct discussed below, which could be actionable separate and apart from the fraud.

every claim, the standard in this jurisdiction is notice pleading. Plaintiffs' robust Complaint more than satisfies the requirements of putting Defendant on notice as to allegations against her.

Defendant also misstates the fraud claim and misapprehends the requirements under Rule 9(b) for stating fraud with particularity. The fraud claim is simple: in signing the Separation Agreement, Defendant made the materially false representation that she would not assert any legal rights to control Dan Capel or his belongings; and in demanding and receiving the separation payments from Ms. Norman and Dan Capel, Defendant reiterated these false statements to Dan Capel and Ms. Norman (through Dan Capel). Obviously, these misstatements were made so that Ms. Norman and Dan Capel would begin making payments to her, and Defendant continuously withheld the true information so that the checks would keep coming. Plaintiffs justifiably relied on Defendant's promises when they paid her and were clearly harmed each time they made payments and later when Defendant tried to control Dan Capel and punish Plaintiffs. This is more than enough "precision" to let Defendant know of what she is accused.

In addition to her affirmative misrepresentations, Defendant also made fraudulent omissions. Specifically, she knew that Ms. Norman was being duped by *Defendant's own statements* into paying the separation payments, yet continued to take her money. Defendant's only response to this is that it was not her fault that Defendant's fraudulent scheme also harmed Ms. Norman. There is absolutely no support for her assertion that a victim of a fraudulent scheme cannot state a claim for fraud because the fraudster chose to remain silent.

Defendant makes two additional ploys to escape liability: a stay; and abstention. However, both of these claims fail because the proceedings upon which she relies do not involve identical parties, do involve very different legal issues and determinations, and will have no impact on the resolution of this proceeding.

**DISCUSSION**

I.   **The Motion to Dismiss Fails To Take the Facts in the Light Most Favorable to the Moving Party**

Defendant's motion is fundamentally flawed because it misapplies the motion to dismiss standards in multiple ways: it fails to take the facts alleged in the complaint as true; cherry-picks factual allegations, ignoring other allegations; tries to take the inferences favor of the moving party; and seeks significantly more specificity than is required under the Rules.   But, as this Court is well aware, the facts in the complaint must be accepted as true.   This is hornbook law. The established corollary to that principle is that, any reasonable dispute regarding interpretations of the facts must be interpreted *in favor of the plaintiff*.

For instance, Plaintiffs allege that Brooke Norman made payments to Defendant; therefore, the only proper analysis at this stage is one that assumes Ms. Norman made those payments.   *See* Compl. at 171 ("Ms. Norman did in fact rely upon Defendant's statements, representations and material omissions and paid several hundreds of thousands of dollars, both directly and indirectly, to the Defendant.").   Accordingly, Defendant's contrary assertion that only Dan Capel made these payments is simply wrong, and any argument predicated on this improper interpretation fails.

Relatedly, notice pleading does not require a plaintiff to assert or prove any facts with particularity.   The standard in this District and Circuit is clear: "Factual allegations in a complaint -- even if 'conclusory'-- are sufficient if they allow the defendant to understand the gist of the plaintiff's claim, thereby making it possible to formulate a meaningful response. . . ." *In re Pressure Sensitive Labelstock Antitrust Litig.*, 356 F. Supp. 2d 484, 493-94 (M.D. Pa. 2005) (internal quotes committed) ("The Amended Complaint's averments concerning MACtac, albeit sparse, are sufficient to satisfy this purpose. Details as to 'when and how' MACtac and Avery

4

engaged in parallel conduct and the precise contours of any agreement or understanding 'would likely be known only by the 'alleged co-conspirators,' and hence should <u>not</u> be required in the complaint.'").   "The hurdle at the motion to dismiss stage in a notice pleading setting such as this is relatively low, because there exist later mechanisms for determining factual disputes." *In re: Carbon Black*, 2005 U.S. Dist. LEXIS 660, 2005 WL 102966, at *6.   Thus, a plaintiff satisfies its burden at the pleading stage "'when the suggested inferences rise to what experience indicates is an acceptable level of probability.'" *In re Pressure Sensitive Labelstock Antitrust Litig.*, 356 F. Supp. 2d 484, 493-94 (M.D. Pa. 2005)   ("In this case, Plaintiffs have provided adequate notice of the nature of their claim against MACtac, the claim is "based on reasonable inferences to be drawn from a series of observed actions, business practices, and market conditions.").

This is so because Rule 8(a) of the Federal Rules of Civil Procedure established a "liberal system of 'notice pleading,'" which "[does] not require a claimant to set out in detail the facts upon which he bases his claim." *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S. Ct. 1160, 1163 (1993).  All that is required is "'a short and plain statement of the claim . . .,'" giving "'the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, 122 S. Ct. 992, 995 (2002).  Thus, all claims for relief, other than those based upon fraud or mistake, fall within the "liberal system of 'notice pleading'" which "'[does] not require a claimant to set out in detail the facts upon which he bases his claim.'" *Leatherman*, 507 U.S. at 168; *Thomas v. Adams*, 55 F. Supp. 3d 552, 568 (D.N.J. 2014) ("*Iqbal* did not change a single word of Rule 8(a) (or Rule 12(b)), or the meanings of these Rules: the actual *holding* of *Iqbal* merely elaborated on the Supreme Court's original <u>passim</u> observation in <u>Dura</u> that 'it should not

prove burdensome [for a plaintiff] to provide [his defendants with] *some indication* of the [facts] that the plaintiff has in mind.'").

The heightened requirement for fraud claims does not alter the result here.  "Granted, the rules do specifically require that fraud be pleaded 'with particularity,' but this requirement must be read in conjunction with the liberal pleading rules, which eschew obsolete technicalities. *Beascoechea v. Sverdrup & Parcel & Assocs., Inc.*, 486 F. Supp. 169, 174 (E.D. Pa. 1980) (citing *Denny v. Carey*, 72 F.R.D. 574 (E.D.Pa.1976); *duPont v. Wyly*, 61 F.R.D. 615 (D.Del.1973); *United Insurance Co. of America v. B. W. Rudy, Inc.*, 42 F.R.D. 398 (E.D.Pa.1967)). "The rules do not impose a rigorous burden of pleading on plaintiff, and do not require plaintiff to plead every element of fraud." *Id*. "Rather, plaintiff must set forth facts with sufficient particularity to apprise defendants fairly of the charges against them." *Id*. (citing *Union Mutual Life Insurance Co. v. Simon*, 22 F.R.D. 186 (E.D.Pa.1958). *See also Consumers Time Credit, Inc. v. Remark Corp.*, 227 F. Supp. 263 (E.D.Pa.1964).). Accordingly, if the plaintiff "identified 'with particularity' the circumstances surrounding the alleged fraud, plaintiff [] plead[s] fraud sufficiently to withstand a motion to dismiss or for a more definite statement." *Id*. Applying this proper standard, the analysis should consider the following:

1. Defendant entered into a Separation Agreement with Thomas Capel; (*E.g.*, Compl. at 4);

2. Under the terms of the Separation Agreement, Defendant agreed to be permanently separated from Thomas Capel; (*Id*. at 94);

3. She could not assert any legal rights that would normally be associated with marriage; (*See* Ex. A to Complaint).

4. She, in return, would receive large sums of money, a house, expenses for horses and tuition, etc.; (*Id*.  at 79) (detailing payments).

5. Defendant had no intention of abiding by these terms; (*E.g.*, Compl. at 191-94).

6.      But, pursuant to these terms, she demanded and received payments from two people: Dan Capel and Brooke Norman; and she knew that the money she received was from Thomas Capel *and* Brooke Norman; (*E.g.* Compl. at 130-32).

7.      In demanding, receiving, and depositing this money, she represented that she would not—among other things— "molest" Dan Capel or interfere, exert authority, contact and control over him; (*Id*. at 77-79, Ex. A).

8.      She promised to forever treat him as though they were "single and unmarried"; (Compl. at 78).

9.      But these were all false pretenses—she never intended to abide by these terms; (*E.g.* Compl. at 191-94).

10.     Dan Capel and Brooke Norman relied on these representations by, among other things, paying part of the separation payments, marrying Thomas Capel, living with Thomas Capel, not seeking a change of Thomas Capel's will (because the purported executrix had waived her right as executrix and heir); (*E.g.*, *id*. at 157, 162-63).

11.     Defendant learned of Brooke Norman's marriage and clearly knew of her reliance on the terms of the Separation Agreement; (*E.g.*, *id.* 157-163).

12.     She did not tell Brooke Norman that she would claim that she was still married or that she would invoke all of the rights Brooke Norman thought she was obtaining as the result of the marriage; (*Id*.).

13.     Defendant withheld this information because she knew that the payments would stop and intended for Ms. Norman to rely on her misrepresentations and subsequent silence; (*Id*.).

14.     Defendant wanted and did continue accepting the money on these false pretenses; (*Id*.).

15.     Each time a check was asked for, received, or cashed these misrepresentations were made; (*Id*.; *id*. at 171)

16.     When Thomas Capel died, Defendant revealed that she never had any intention of living up to the terms of the agreement; (*E.g.*, Compl. at 61).

17.     She invoked the rights that she promised to never invoke;

18.     After invoking these rights, she began to engaged in further fraud and deception;

19.     She had Dan Capel's daughter "call a federal agency and pretend to be Dan Capel's wife, Ms. Norman"; (*Id*. at 111).

20.     She had someone call and pretend to be a business partner of Dan Capel's in order to find out information about a business of his. (*Id*. at 112).

21.     Not only was this fraudulent, but this was also a violation of the Separation Agreement, which provided that:

> each party hereby waives and relinquishes any and all rights he or she may now have or hereafter acquire . . . to share in the property or the estate of the other as a result of the marital relationship . . . .  (Ex. A); Compl. at 76.

22.     She also disparaged those close to Dan Capel in order to harm them; (*E.g.* Compl. at 135).

23.     She accused Brooke Norman of just "pretending" to be with Dan Capel and not actually loving him; she said that Ms. Norman was trying to "steal" Dan Capel; (*Id*. at 134-36).

24.     She instituted an action in North Carolina, falsely claiming under oath that Dan Capel did not live in North Carolina;  (*E.g.* Compl. 92-95).

25.     She instituted an action in Pennsylvania, falsely claiming under oath that Dan Capel resided in Pennsylvania;( *Id*.).

26.     These actions caused extreme emotional distress to Brooke Norman and have harmed her reputation and standing in her community. (*Id*. at 209-15).

As discussed below, these statements more than provide sufficient notice to Defendant of the causes of action alleged and—when accepted as true—clearly would support a plausible claim for relief.

## II.   Plaintiffs Have Stated a Cause of Action for Conversion

As discussed *supra*, a complaint need not state with precision each and every fact giving rise to a claim.  Rather, to satisfy FRCP 8, it need only put the defendant on notice as to the conduct alleged.  Thus, for the conversion claim to survive a motion to dismiss, the Complaint need only put Defendant on <u>notice</u> that she has deprived Plaintiffs of their right to use or enjoy their property, that Plaintiffs did not give consent, and Defendant lacks a legal justification.

Here, the Complaint plainly states that Defendant has exercised control over assets belonging to Plaintiff.  It alleges that Defendant has started a "probate action in Pennsylvania,"

Compl. at 88, and that she has also claimed benefits to which Plaintiffs are rightfully entitled, *id*. at 102, 144, 147. Obviously, an executrix exercises control over the estate and the recipient of spousal/family benefits exercises control over those funds to the exclusion of other family members. Therefore, there is no issue with notice as to the alleged control or deprivation.

Defendant's issue seems to focus on the fact that Plaintiffs have not identified which specific things were stolen. *See* Pl. Br. at 7. But this too is wrong. First, even Defendant admits that Plaintiffs have identified certain stolen benefits, i.e. put her on notice as to the conversion claim. So, Defendant's argument really seems to be that Plaintiffs have identified only some of the property she stole (but not all converted property). This is an erroneous argument and obviously does not support dismissal of the entire claim. Further, because there has been no discovery, the extent to which Defendant has robbed the Estate of Dan Capel and his family is currently known only to Defendant. This is precisely why the rules do not require particularity in the complaint. At the very least, Defendant's admission that Plaintiffs have identified some stolen property is enough to allow the claim to stand as to those stolen funds.

Lastly, Defendant makes a passing reference to an argument that Plaintiffs are not entitled to these funds and/or that they did not prove that Defendant has no justification. This is bizarre. The entire complaint is premised on factual allegations that Defendant waived her rights to collect money from Dan Capel and that she is a fraudster who has no claim to these funds. The obvious inference from these allegations is that Plaintiffs are entitled to this property and Defendant is not.

## III. Plaintiffs Have Stated a Cause of Action for Interference with Prospective Economic Advantage and/or Intentional Interference with Contractual Relations

Defendant moves to dismiss the claims regarding interference with Plaintiffs' contractual rights to receive benefits in the event of Mr. Capel's death on the grounds that there is no

"prospective contractual relationship between themselves and any other party."  Pl. Br. at 8.

This flatly ignores the Complaint, which states that Plaintiffs had a contractual right under Dan

Capel's various life insurance policies, survivor benefits, and other end-of-life contracts.

Because there is a prospective contract at issue (indeed multiple ones) and Defendant took

affirmative steps to interfere with those contracts, the motion to dismiss this claim fails.

## IV.     Plaintiffs Have Stated a Cause of Action for Fraud

Defendant's arguments regarding the fraud claim grossly misstate the factual allegations

and severely understate her culpability.  Specifically, Defendant seems to argue that she was

passively involved in the fraud and that her only fault is not telling Plaintiffs her marital status.

That is a distortion of the allegations.

The Complaint alleges that Defendant was far from silent: Defendant affirmatively stated

in the Separation Agreement that she waived all legal rights vis-à-vis Dan Capel, affirmatively

demanded payments from Dan Capel and Brooke Norman based on her promise not to claim

these legal rights or otherwise try to control him, and actively accepted and deposited the money

she received from them, knowing full well that they would not have made these payments had

she not lied.  These are <u>active misrepresentations</u> directed at Dan Capel and Brooke Norman.

That Defendant may not have directly stated these lies to Brooke Norman but rather used Dan

Capel or other intermediaries to relay these lies to Defendant is irrelevant—she made these

statements with the intention that Dan Capel and Brooke Norman rely on them.

To be clear, the omissions are actionable <u>as well</u>.  Defendant's argument seems to be that

only Dan Capel was the target of the fraud and, therefore, any other victims of her misstatements

have no claim.  This is laughable.  Having orchestrated a fraudulent scheme, Defendant had a

duty to not receive payments from other "non-parties" who were duped by her statements.  A

contrary result would be untenable.  This would be akin to allowing a fraudster to create a false charity to con, say, widows into give her a "donation" and then arguing that she is not liable when the widow's son contributes money to the cause based on those same lies.

Lastly, the Complaint is in compliance with Rule 9(b).  First, Defendant herself admits that Plaintiffs provided some dates; thus, the requisite specifics have been provided.  Second, dates are far from necessary at this stage; all that is needed is some "additional precision." As discussed *supra,* "[t]he rules do not impose a rigorous burden of pleading on plaintiff, and do not require plaintiff to plead every element of fraud." *Beascoechea v. Sverdrup & Parcel & Assocs., Inc.*, 486 F. Supp. 169, 174 (E.D. Pa. 1980).  "Rather, plaintiff must set forth facts with sufficient particularity to apprise defendants fairly of the charges against them."  *Id*. (*citing Union Mutual Life Insurance Co. v. Simon*, 22 F.R.D. 186 (E.D.Pa.1958). *See also Consumers Time Credit, Inc. v. Remark Corp*., 227 F. Supp. 263 (E.D.Pa.1964).).  Accordingly, if the plaintiff "identified 'with particularity' the circumstances surrounding the alleged fraud, plaintiff [] plead[s] fraud sufficiently to withstand a motion to dismiss or for a more definite statement."  *Id*. Here,

Plaintiffs plainly stated what the lies were, when they started, i.e. when the Separation Agreement was signed.  Plaintiffs plainly stated who relied upon the lies (Dan Capel and Brooke Norman) and that each time a payment was received this was reliance and constituted another misrepresentations.[2]  Because there can be no doubt as to who is the fraudster, against whom she committed the fraud, and the content of her misstatements, Plaintiffs have stated a claim.

---

[2] The demand for dates is especially weak where, as here, the Plaintiffs have alleged that every single payment was the result of fraud and every single payment was actionable.  If Defendant were truly confused as to when she stole the money, she could look to her own bank statements, which reflect the pay statements.

**V.     Plaintiffs Have Stated A Cause of Action for Negligent Misrepresentation**

Defendant seeks to dismiss the negligent misrepresentation claims based on the same misstatement of the Complaint.  As explained in the fraud discussion *supra*, Plaintiffs are not suing because of Defendant's lies regarding her marital status; they are suing because she fraudulently entered into a contract she had no intention of honoring, demanded payments pursuant from that contract, and cashed and received payments from those who she knew or should have known were relying on her statements.  Further, Defendant is not a passive participant—she actively reached out to Dan Capel and to Brooke Norman (through Dan Capel).  Thus, this alternative theory to the fraudulent representation claims should be allowed to survive this preliminary stage.

**VI.     Plaintiffs Have Stated  A Cause of Action for Defamation**

Defendant seeks to dismiss the defamation and defamation per se actions on the grounds that Ms. Norman has no identified special harm.  However, even Defendant admits that "words that impute (1) criminal offense, (2) loathsome disease, (3) business misconduct, or (4) serious sexual misconduct," satisfy this standard.  *Pennoyer v. Marriott Hotel Servs.*, 324 F. Supp. 2d 614, 618 (E.D. Pa. 2004).  The Complaint alleges that Defendant publicly stated that Ms. Norman was trying to "steal" Dan Capel, "pretending" to be his with and co-habitating with a man she *allegedly* knew was married to someone else.  Clearly, such statements more than impute serious sexual misconduct and are actionable.

**VII.     Plaintiffs Have Stated a Claim for Intentional Infliction of Emotional Distress**

Defendant argues that Ms. Norman's s IIED claim fails to allege "extreme and outrageous" conduct.  But, again, the Defendant short-sells the depth of her depravity.  Defendant's actions are not limited to merely publishing "scandalous" information.  Defendant

manufactured a web of lies and engaged in a years-long pattern of deception and manipulation in order to steal money from Plaintiffs.  Then, shortly after Dan Capel's heart stopped beating, she began to intimidate, threaten, and harass his loved ones.  For no reason other than to harm Ms. Norman, Defendant made disparaging comments about the man she knew Ms. Norman loved; she disparaged their relationship, calling their years-long relationship a lie.  And to top it all off, she tried to take the Ms. Norman's closest friend and loved one's body.  Plaintiffs respectfully ask that this Court take a moment to let this last part sink in.  Defendant has been trying to capture the body of a man who spent the last few years of his life paying large sums of money in order to keep her away; a man who gave up his entire home, his horses,  and his cars, so that she would leave him alone.  If a defendant deceiving and manipulating a family for years, only to spring her trap when her victims are at their most vulnerable and then trying to take his body is not "extreme and outrageous" then this standard is unattainable.

Defendant also argues that Plaintiff has not adequately described her emotional and physical ailments.  However, this is a motion to dismiss—the plaintiff need only allege facts that, taken in the light most favorable to plaintiff, put defendant on notice as to the allegations against her and to the suffering of physical ailments.  Clearly, Defendant has notice of the facts, circumstances and results.  She will obtain additional specificity using the mechanisms designed for specificity, i.e. discovery.  An IIED claim is not subject to Rule 9(b) anyway.

**VIII.    Defendant Asks for the Wrong Form of Relief**

Defendant's motion is premised on the flawed notion that allegations are vague or conclusory.  These are not proper arguments on a motion to dismiss.  But, to the extent, the Court is not satisfied with the specificity in this notice, the proper remedy is leave to amend.

**IX.     Defendant's *Colorado River* Doctrine Argument has No Merit**

Defendant claims that this case presents the "extraordinary circumstances" required for this court to abstain from its duty to exercise its jurisdiction under the under the *Colorado River* doctrine.   But as explained below, Defendant does not even satisfy the requisite, threshold showing of parallel state proceedings, which is fatal to her argument, and thus never makes it to the "extraordinary circumstances" six factor-test she applies in her brief.   Nor could she satisfy that test, even assuming there was reason to apply.

The Supreme Court explained the narrowness of the doctrine:

Abstention from the exercise of federal jurisdiction is the exception, not the rule. The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813-14 (1976)(quotations omitted).   This Court has further elaborated that it "it is axiomatic that federal courts have a virtually 'unflagging obligation' to exercise the jurisdiction given them by Congress." *Greg Welteroth Holding, Inc. v. Alejo Mo Sun*, 2013 U.S. Dist. LEXIS 194143 (M.D. Pa. Dec. 13, 2013), *adopted by sub nom*, 2014 U.S. Dist. LEXIS 194487 (M.D. Pa., Mar. 18, 2014)(J. Judge Brann) (citing *Ryan v. Johnson*, 115 F.3d 193, 195 (3d Cir. 1997)).   "Accordingly, Colorado River abstention must be grounded on more than just the interest in avoiding duplicative litigation." *Id*. (citations omitted).   Ultimately "[o]nly the clearest of justifications warrant the granting of a stay" under this doctrine.   *Id*.

Nowhere does Defendant acknowledge that to apply this doctrine, she must satisfy a two-part test, and that failure of the first part precludes abstention.   The Third Circuit has explained:

Whether abstention is appropriate is a two-part inquiry. The initial question is whether there is a parallel state proceeding that raises "substantially identical claims [and] nearly identical allegations and issues." *Yang v. Tsui*, 416 F.3d 199, 204 n. 5 (3d Cir. 2005) (internal quotation and citation omitted). <u>If the proceedings are parallel, courts then</u> look to a multi-factor test to determine whether "extraordinary circumstances" meriting abstention are present.

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton Inc.*, 571 F. 3d 299 (3d Cir. 2009)(emphasis added). *See also, e.g., Golden Gate Nat'l Senior Care, LLC v. Minich*, 629 Fed. Appx. 348 (3d Cir. Oct. 16, 2015)(" first step a district court must take before abstaining under Colorado River is to determine whether the federal and state proceedings are parallel….. *If a court finds the proceedings to be parallel, it then carefully balances a host of factors to determine if abstention is warranted….*"); *Fuller v. Insys Therapeutics, Inc*., 2018 U.S. Dist. LEXIS 18431 (D.N.J. Jan. 19, 2018), *adopted sub nom*, 2018 U.S. Dist. LEXIS 18491 (D.N.J., Feb. 5, 2018)(concluding under first step that cases are not parallel, and not proceeding on six factors).

### A.    Defendants Fails to Show Parallel Cases

As the Third Circuit has explained, "Two proceedings generally are considered parallel when they 'involve the same parties and substantially identical claims, raising nearly identical allegations and issues,'" *Yang v. Tsui*, 416 F.3d 199, 204 n.5 (3d Cir. 2005) (citation and internal quotation marks omitted), and when plaintiffs in each forum seek the same remedies, see *Harris v. Pernsley*, 755 F.2d 338, 346 (3d Cir. 1985)." *Golden Gate*, 629 Fed. Appx. at 350. *See also, e.g, Welteroth Holding,* 2013 U.S. Dist. LEXIS 194143 ("Generally, cases are parallel when they involve the same parties and claims."). *See also*, *Fuller*, 2018 U.S. Dist. LEXIS 18431 ("Parallel proceedings are those that are 'truly duplicative,' that is, when the parties **and** the claims are 'identical,' or at least 'effectively the same.'" (emphasis added)).  Cases are not parallel where the "federal court case involves claims that are distinct from those at issue in [the] state court

case," such as where the parties "employ substantially different approaches which might achieve potentially different results.") (*quoting Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 285 (3d Cir. 2017)(case cited by Defendant)).

Here, as Defendant acknowledges, *none* of the Plaintiffs are a party in the Pennsylvania probate action. And as Defendant acknowledges, neither Plaintiff Harrison Capel nor Plaintiff the Estate are party to the North Carolina case. This is fatal to Defendant's abstention argument. *See Welteroth*, 2013 U.S. Dist. LEXIS 194143 ("In the divorce proceeding, filed in the State of California, Sun seeks to have [Plaintiff] Welteroth joined as a claimant. However, there is nothing in this Court's record indicating that Welteroth was in fact joined as a party. *As such, the parties are not the same and the action should not be considered parallel.*")(emphasis added). *See also, e.g., Fuller*, 2018 U.S. Dist. LEXIS 18431 (no parallel proceedings because "[a]lthough at some point, the two cases may have had the same parties, that is no longer the case.").

Even assuming, *arguendo*, that Plaintiffs here are joined, the claims are still not even close to parallel. This is an action for breach of contract, conversion, intentional interference with a prospective economic advantage, fraudulent misrepresentation, negligent misrepresentation, common law fraud, defamation, and equitable estoppel. The Pennsylvania case is a probate action, and has no such claims. The North Carolina case involves Defendant's claims for the cash value of Dan Capel's body (conversion), emotional distress, and declaratory relief. Ms. Norman does not have claims pending against Defendant in North Carolina.

**B.     Even if Defendant met her burden of showing parallel cases, she cannot establish "extraordinary circumstances" under the six-factors**

Even if Defendant somehow met the first test, she cannot meet the second: showing "extraordinary circumstances" under six factors. The Third Circuit explained this second test:

In determining whether an action presents "extraordinary circumstances" we consider six factors: "(1) [in an *in rem* case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties." *Spring City,* 193 F.3d at 171 "No one factor is determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." [citation omitted]. The balancing of factors is "heavily weighted in favor of the exercise of jurisdiction." [citation omitted]

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton Inc.*, 571 F. 3d 299, 308 (3d Cir. 2009)

As shown below, the relevant factors weigh heavily against abstention.

### (1)      *In rem* jurisdiction over property

This factor has little if any weight here.   There is no *res* at issue in the North Carolina proceeding.  Both this action and the North Carolina action seek money damages, which are not a *res*, so there is no risk of inconsistent ownership claims over the property.

### (2)      The inconvenience of the federal forum

This factor weighs against abstention—both this case and the probate proceeding are in Pennsylvania.   In addition, this case is brought in the federal court district in which the Defendant resides. There can be no argument that the forum is inconvenient for the Defendant.

### (3)      The desirability of avoiding piecemeal litigation;

"The Third Circuit has determined that this factor favors abstention only when there is 'evidence of a strong federal policy that all claims should be tried in the state courts.'" *Welteroth* The presence of garden-variety state law issues has not been considered sufficient evidence of a federal policy to consolidate multiple lawsuits for unified resolution in the state courts." *Welteroth*, 2013 U.S. Dist. LEXIS 194143, * 8 (quoting and citing *Ryan*, 115 F.3d at 198).  Here, there simply is no federal policy asserting that Plaintiff's claims should be tried in state courts.

*See, e.g., id* (observing no federal policy for Plaintiff's "garden-variety state law claim for breach of contract that is wholly independent and easily severable from Sun's divorce proceeding in California's state court").   This factor therefore weighs against abstention.

### (4)     The order in which jurisdiction was obtained

"'This factor, as with the other *Colorado River* factors, is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand.' Thus, priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Welteroth*, 2013 U.S. Dist. LEXIS 194143 (quoting and citing *Moses H. Cone*, 460 U.S. at 21).   Here, there has been little progress.   The North Carolina action is still in the discovery phase, while Defendant has provided no indication how far the Pennsylvania action has advanced.   Importantly, there has be <u>no progress</u> on any of the issues relevant to this case because each of those cases involve entirely different legal issues.

### (5)     Whether federal or state law controls

"As [*Moses H.*] *Cone* made clear, while the presence of federal issues militates against abstention, the converse cannot be said; abstention cannot be justified merely because a case arises entirely under state law." *Ryan*, 115 F.3d at 199.   Here, Pennsylvania state law applies pursuant to the Choice-of-Law Clause in the Separation Agreement.   This weights against abstention.  See, e.g., Welteroth ("The matter *sub judice* arises solely under the laws of one of the several states, but does so through a choice of law provision establishing that Pennsylvania law will govern. Such choice of law provisions are enforceable and routinely upheld….The issue here involves a breach of contract, and Pennsylvania law was chosen to govern the action; a body of law that this Court is frequently called upon to apply and interpret. Consequently, this factor weights against abstention.").

**(6)     Whether the state court will adequately protect the interests of the parties.**

"This factor [whether the state court will adequately protect the interests of the Parties] is generally a one-way ratchet, serving only to weigh against abstention where a state court is incapable of protecting a party's interests." *Golden Gate Nat'l Senior Care, LLC v. Minich*, 629 Fed. Appx. 348, 352 (3d Cir. 2015).   Here, Plaintiffs are not parties in the Pennsylvania action, and Harrison Capel is not a party in the North Carolina action—so there is reason to believe that those court are not able to protect their interests.  Therefore, this factor weighs against abstention.

Balancing these factors in light of the Court's duty to "heavily weigh[] [them] in favor of the exercise of jurisdiction," there is not doubt that this case lacks the "exceptional circumstances" required to abstain under *Colorado River*—even assuming that there were parallel cases in the first place, which there are not.

**X.     Defendant's Half-Hearted Request for a Stay Should Be Denied**

Though this is a Motion to Dismiss, Defendant also asks this Court to stay the proceedings.  But Defendant provides no new grounds for its stay request.  Rather, it just rehashes the meritless abstention arguments.  For the same reasons the abstention argument fails so too mush the stay request—the parties are not the same, the legal issues are not the same, and there is no overlap between the cases.  Accordingly, a stay would not advance any judicial economy issues and would serve only to delay justice.

**XI.    Defendant's Efforts to Avoid Suit by the Estate Are Meritless**

Defendant argues that Plaintiffs cannot bring a claim on behalf of the Estate of Dan Capel, and, as a result, do not have standing to bring claims on behalf of the estate.  But her attempts to avoid any liability to the man she has defrauded for years fail.  Importantly, even if the Estate were dismissed, this Court would still retain jurisdiction over the claims in this case as both

Brooke Norman and Harrison Capel clearly have standing.  Thus, this case will go on regardless of whether the Estate stays in.  Accordingly, any judicial economy argument would clearly fail— these issues will be conclusively determined in this case.

Further, allowing Plaintiffs to assert this claim on the Estate's behalf ensures that there is a remedy for a violation of the Estate's rights.  *Marbury v. Madison*, 5 U.S. 137, 163 (1803) recognized an incontrovertible truth: "every right, when withheld, must have a remedy, and every injury its proper redress."  However, dismissing the claims on behalf of the Estate will cause Dan Capel's claims for breach of contract, fraud and other misconduct to be without a remedy, as the Defendant would otherwise be insulated from legal challenge to the manner in which she exercises her purported executrix duties.  To be clear, though the Plaintiffs do not hold formal letters of administration, the claims raised are for the benefit of the Estate, as they preserve the decedent's assets and survivor benefits from conversion by the Defendant.  Defendant cannot be trusted to do this, and indeed she has not.

As the Defendant has defrauded the Estate, she cannot be in a position to determine whether the Estate should proceed with claims against her.  The Estate cannot be deprived of its right to remedy this fraud against the decedent just because the fraudster refuses to sue herself.  Because this Court will retain jurisdiction over all of the claims in this case and because the parties' standing to bring suit on behalf of the estate will "relate back," this Court should allow the Estate to remain in this case at this early stage.  Keeping the Estate in this case will not add any unnecessary complications or costs for the parties, and it will ensure that there is an adequate remedy for the allegedly wronged parties.

## CONCLUSION

For the reasons set forth *supra*, the Motion to Dismiss should be denied.

**Dated**: August 16, 2018:

<div style="margin-left: 40%;">

*/s/ Kathryn Rimpfel*
Kathryn Rimpfel (PA319238)
Teddy Baldwin (DC973850; *pro hac vice*
    application forthcoming)
Graham Cronogue (DC1044036; *pro hac vice*
    application forthcoming)
**Baker & McKenzie LLP**
815 Connecticut Ave, NW
Washington, DC 20006
Phone: (202) 452-7000
Fax: (202) 452-7074
Kathryn.Rimpfel@bakermckenzie.com
Teddy.Baldwin@bakermckenzie.com
Graham.Cronogue@bakermckenzie.com
*Attorneys for Plaintiffs*

</div>