IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HARRISON CAPEL, *et al.*

               Plaintiffs,

v.

LAURA CAPEL,

               Defendant.

Case No. 4:18-CV-00918

(Judge Brann)

## DEFENDANT'S REPLY BRIEF TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

/s/ Ellen C. Brotman
Ellen C. Brotman, Esq.
PA Id. # 71775
Brotman Law
One South Broad Street
 Suite 1500
Philadelphia, PA 19107
215-609-3247
ebrotman@ellenbrotmanlaw.com

Jeremy B. Foltz, *pro hac vice*
NC Bar No. 48576
The Law Office of Jeremy Foltz,
PLLC
P.O. Box 25494
Winston-Salem, NC 27114
(336) 303-6788
jeremyfoltzlaw@gmail.com
*Counsel for Defendant*
*Laura Capel*

Dated: September 5, 2018

# TABLE OF CONTENTS

ARGUMENT ...................................................................................................................1

I.  PLAINTIFFS COMPLAINT SHOULD BE DISMISSED UNDER RULE
    12(b)(6) BECAUSE IT DOES NOT SUPPORT A PLAUSIBLE BASIS FOR
    RELIEF. ....................................................................................................................1

   A.  Plaintiffs' Response Mischaracterizes Their Complaint and the Settlement
       Agreement on Which They Rely. ...................................................................................3

   B.  Plaintiffs' Reliance on *Marbury v. Madison* Cannot Overcome the
       Requirement That the Estate Can Only Bring Suit Through its Authorized
       Representative and is Not a Proper Party Here. .................................................7

   C.  Plaintiffs Fail to State a Cause of Action for Conversion and Count I Must
       Be Dismissed. ...................................................................................................8

   D.  Plaintiffs Fail to State A Cause of Action for Interference with
       Prospective Economic Advantage. ...................................................................9

   E.  As a Matter of Law, Plaintiffs Cannot Prove Either Common Law Fraud
       or False Misrepresentations; Counts III and V Must be Dismissed..................................10

   F.  Plaintiff Norman Fails to State a Claim Based on Negligent
       Misrepresentation and Count IV Must Be Dismissed. ...................................................12

   G.  Plaintiff Norman Fails to State a Claim for Defamation or Defamation
       Per Se; Count VI Must be Dismissed. .............................................................12

   H.  Count VII Alleging a Cause of Action in Equitable Estoppel Must be
       Dismissed..........................................................................................................13

   I.  Plaintiff Norman Fails to State a Claim for Intentional Infliction of
       Emotional Distress and Count IX Must Be Dismissed. ...................................................13

II.  THIS COURT SHOULD ABSTAIN OR STAY THE CASE
     PENDING THE DETERMINATION OF THE ISSUE OF THE
     IDENTITY OF THE SURVIVING SPOUSE IN NORTH CAROLINA. ...................14

CONCLUSION...............................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.E.P. Industries, Inc. v. McClure,*
    308 N.C. 393 (1983) ..................................................................................................6

*Armstrong v. Paoli Memorial Hospital,*
    633 A.2d 605 (Pa. Super. 1993)................................................................................14

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).................................................................................................1, 9

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007).................................................................................................1, 9

*Bortz v. Noon,*
    556 Pa. 489 (1998)....................................................................................................12

*Capel v. Capel,*
    272 F. Supp. 3d 33 (D.D.C. 2017)..............................................................................2

*Chuy v. Philadelphia Eagles Football Club,*
    595 F.2d 1265 (3d Cir. 1979)....................................................................................13

*Commonwealth v. Balisteri,*
    478 A.2d 5 (1984) .....................................................................................................13

*Corbett v. Morgenstern,*
    934 F.Supp. 680 (E.D. Pa. 1996) .............................................................................14

*Dempsey v. Bucknell Univ.,*
    76 F. Supp. 3d 565 (M.D. Pa. 2015) ........................................................................12

*Hoffman v. Memorial Osteopathic Hospital,*
    492 A.2d 1382 (1985) ..............................................................................................13

*Hynoski v. Columbia County Redevelopment Auth.,*
    941 F. Supp. 2d 547 (M.D. Pa. 2013) ........................................................................5

*Kelly v. Maxum Specialty Ins. Grp.,*
    868 F.3d 274 (3d Cir. 2017)......................................................................................14

*Love v. Cramer,*
    606 A.2d 1175 (Pa. Super), app. Denied 621 A.2d 580 (Pa. 1992)..........................14

*Marbury v. Madison*,
   5 U.S. 137 (1803) ................................................................................................6

*McKeeman v. Corestates Bank, N.A.*,
   2000 Pa. Super. 117, 751 A.2d 655 (Pa. Super. 2000) ........................................8

*Papieves v. Lawrence*,
   263 A.2d 118 (1970) ..........................................................................................13

*Sewak v. Lockhart,*
   699 A.2d 755 (Pa. Super. 1997) .........................................................................12

*Shane v. Fauver*,
   213 F.3d 113 (3d Cir. 2000) .................................................................................3

*Thomas v. Adams*,
   55 F. Supp. 3d 552 (D.N.J. 2014) ........................................................................1

*Wagner v. Holtzapple*,
   101 F. Supp. 3d 462 (M.D. Pa. 2015) .............................................................1, 10

*Young v. Sunbury Police Dep't*,
   160 F. Supp. 3d 802 (M.D. Pa. 2016) ..................................................................1

**Statutes**

20 Pa.C.S. § 908 .......................................................................................................7

42 U.S.C. § 1983 .......................................................................................................1

**Other Authorities**

F.R.C.P. Rule 8 .........................................................................................................8

F.R.C.P. Rule 12 ..................................................................................................1, 14

<u>**ARGUMENT**</u>

**I.  PLAINTIFFS COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6) BECAUSE IT DOES NOT SUPPORT A PLAUSIBLE BASIS FOR RELIEF.**

The Defendant's Motion to Dismiss correctly states the standard for considering dismissal under Rule 12(b)(6): viewing the facts in the light most beneficial to the Plaintiff (and disregarding conclusions of law), the Complaint must allege a plausible basis for relief which provides a reasonable basis for permitting discovery. Allegations which amount to no more than a mere possibility of liability should be dismissed in the interest of protecting parties from vexatious litigation. *Young v. Sunbury Police Dep't*, 160 F. Supp. 3d 802, 806 (M.D. Pa. 2016) ("[A motion to dismiss] tests the legal sufficiency of a pleading and streamlines litigation by dispensing with needless discovery and factfinding.") *relying on Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). As this Court has noted, the plausibility determination is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Wagner v. Holtzapple*, 101 F. Supp. 3d 462, 468 (M.D. Pa. 2015); *quoting Iqbal*, 556 U.S. at 663-664. A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," cannot make the leap from possibility to plausibility. *Young,* 160 F..Supp. 3d. 807, *quoting Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)). [1]

Here, the facts of this Complaint barely achieve possibility – let alone the plausibility that is required to permit Plaintiffs to continue their pattern of subjecting Defendant to vexatious and

---

[1] Plaintiffs argue that Defendant has not properly applied the standard for a 12(b)(6) motion. Only one of the cases cited in Plaintiff's response was decided post *Iqbal* and *Twombly*: *Thomas v. Adams*, 55 F. Supp. 3d 552 (D.N.J. 2014). *Thomas* simply holds that these cases did not change the substantive requirements of finding supervisory liability in a civil rights case brought pursuant to 42 U.S.C. § 1983. *Id.* at 587.

baseless federal lawsuits. *See, e.g., Capel v. Capel*, 272 F. Supp. 3d 33, 42 - 3 (D.D.C. 2017) (Dismissing complaint with prejudice for lack of personal jurisdiction and denying motion for jurisdictional discovery finding that plaintiffs had "fallen far short" of even the liberal standard for granting such discovery.). The District of Columbia Complaint described a RICO theory which Plaintiffs have now abandoned; the current Complaint reads as a series of character smears and innuendo, set against a background of unfortunate circumstances for which Defendant Capel is neither responsible nor liable.[2] The Complaint includes both an imaginary party ("the Estate of Dan Capel") and an imaginary cause of action ("Equitable Estoppel") neither of which could seriously have been intended to survive the Motion to Dismiss stage. The briefest research would have revealed to Plaintiffs that they could not prosecute on behalf of the Estate of Dan Capel or bring a cause of action for equitable estoppel. The inclusion of a non-existent party and a non-existent cause of action, along with the abandonment of the RICO claims used in the District of Columbia action, raise an inference that this lawsuit is intended to procure a strategic advantage rather than a legitimate effort to vindicate rights.

The Complaint should be dismissed with prejudice; in consideration of the proceedings in North Carolina and Lycoming County, the contrived nature of Plaintiffs' pleadings here, and the failed earlier attempt to sue in the District of Columbia, no leave to amend should be granted. Such amendment would be an inequitable and futile effort, and Plaintiffs have not given any indication

---

[2] Plaintiffs attempt to identify the allegations that provide a factual basis for finding a plausible basis for relief and describe them in 26 numbered paragraphs. Pls. Br. at 6 – 7. Most of these 26 paragraphs fall into the following categories: inaccurate descriptions of the alleged facts (¶ ¶ 3, 5, 7, 9, 11, 12, 12, 14, 15, 16); lack of citation to support in the Complaint (¶ ¶ 17, 18); irrelevant facts (¶ ¶ 20, 22); legal conclusions (¶ ¶ 24 – 26.).

that amending the Complaint would have a curative effect. *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).

### A. Plaintiffs' Response Mischaracterizes Their Complaint and the Settlement Agreement on Which They Rely.

Plaintiffs' response demonstrates a recognition that a) the issue of the identity of the surviving spouse is currently being litigated in North Carolina and b) the litigation of this fact dispositive to the issues here. Thus, at a minimum, Defendant has provided ample support for a stay of these proceedings, pending the disposition of the issues in North Carolina. *See* Motion to Dismiss at 16 – 27.

Plaintiffs' recognition of this reality has led them to argue that the identity of the surviving spouse is unimportant to this case. Pls. Br. at 1. Instead, Plaintiffs argue that "[t]he core legal issue … is whether Defendant lied to Plaintiffs about waiving her <u>legal rights</u> associated with marriage in order to obtain money under false pretense." Pls. Br. at 1 (Emphasis supplied.). In explanation of their new position, Plaintiffs argue that Ms. Capel was actually "lying about her <u>separated status</u> in order to steal money from Plaintiffs <u>pursuant to the Separation Agreement</u>." Pls. Br. at 2 (Emphasis supplied.). This reframing of the issue contradicts the Complaint's central theory that either Ms. Norman *is* Dan Capel's surviving spouse or that Ms. Norman was somehow duped by Ms. Capel into *believing* that she was Dan Capel's surviving spouse. *See* Complaint at ¶¶ 2 - 5, 10, 57, 62, 85, 97, 102 – 105, 129 – 134, 144, 156 – 164, 167 – 172, 175 – 178, 189 – 194.

Plaintiffs' new theory fails to defeat the Motion to Dismiss for several reasons. First, Plaintiffs mischaracterize the Separation Agreement they now seek to enforce**,** Exhibit A to their Complaint**.** Plaintiffs state that, according to the Separation Agreement, Ms. Capel "could not assert any legal rights that would normally be associated with marriage." Pls. Br. at 6. In fact, the

Separation Agreement states the opposite. The Agreement provided that Ms. Capel would receive the following rights:

- spousal support of $3,000 per month; *see* Pls. Ex. A at ¶4;

- fifty percent (50%) of all of Dan Capel's retirement benefits received through his government employment; *see* Pls. Ex. A at ¶4;

- Ms. Capel was to be named as a beneficiary and survivor-annuitant of Dan Capel's military and government retirement accounts until a Qualified Domestic Relations Order was entered, if necessary; Complaint, Exhibit A, at ¶ 7;

- Dan Capel was required to name Ms. Capel as the beneficiary of a life insurance policy maintained for the purpose of guaranteeing the spousal support. If Dan Capel were to die before Ms. Capel had received her full alimony payment, Ms. Capel would "receive one hundred percent (100%) of the value of this life insurance policy;" *Id.;*

- Dan Capel was required to provide Ms. Capel health insurance, whether or not he was employed, until she remarried; Complaint, Exhibit A, at ¶ 8;

- Dan Capel was required to pay Ms. Capel's educational expenses, including completing her college and master's programs. Complaint, Exhibit A, at ¶ 9;

- Dan Capel was required to pay for "the maintenance and boarding (if any) of the horses acquired by the parties." Complaint, Exhibit A, at ¶ 10.

- As to the waiver of claims against estates, both parties waived any statutory rights of spousal election but did not waive "any testamentary provision which the other

may voluntarily make for him or her after the date of this Agreement." Complaint, Exhibit A, at ¶ 18.[3]

As the Plaintiffs have stated, there is no "doubt" that the existence or non-existence of a divorce has no "impact whatsoever" on Defendant's rights under the Agreement. Pls. Br. at 1. The explicit provision of spousal benefits to Ms. Capel, pursuant to Plaintiffs' Exhibit A, contradicts not just Plaintiffs current assertions that Ms. Capel waived her legal rights as a spouse, it also disproves the Complaint's many allegations concerning Ms. Capel's attempts to wrongfully appropriate "benefits" to which she was entitled, pursuant to the Separation Agreement. *See Hynoski v. Columbia County Redevelopment Auth*., 941 F. Supp. 2d 547, 555 (M.D. Pa. 2013) ("The court may also, however, take judicial notice of certain facts, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").

Further, if, as Plaintiffs argue, this is an action to "enforce" the Separation Agreement, neither Plaintiff Harrison Capel nor Plaintiff Brooke Norman were parties to this Agreement and there are no allegations that Defendant ever discussed the Separation Agreement with either of them, let alone lied to them about its provisions. Plaintiffs Capel and Norman have pled no cause of action based on breach of contract or fraudulent inducement to enter a contract, despite their current arguments to the contrary. *see* Pls. Br. at 1, 3, 6 (¶5), 7 (¶¶9 – 16), 10, 11, 12). In fact, the only party that could bring an action based on a breach of the Separation Agreement is the Estate of Dan Capel: the Plaintiffs effectively concede they are not authorized to represent the Estate and therefore that party must be dismissed from this lawsuit along with Count VIII, the breach of contract count. *See* Pls. Br. at 19 – 20 (conceding that "the Plaintiffs do not hold formal letters of

---

[3] Plaintiffs do not dispute that, after the Separation Agreement, Dan Capel did not change his Will.

administration….” and relying on *Marbury v. Madison,* 5 U.S. 137 (1803) for support of its claim that it can proceed on behalf of the Estate notwithstanding Pennsylvania law to the contrary.).

Plaintiffs' new argument that the identity of Dan Capel's surviving spouse is not at issue is wrong: each cause of action is defeated if the North Carolina court finds that Laura Capel is the legal surviving spouse. *See* Motion to Dismiss at 25 – 26 (analyzing the dispositive effect of the fact of who the surviving spouse is on each Count of the Complaint.). The North Carolina Court has already granted a preliminary injunction against Plaintiff Brooke Norman, specifically prohibiting Ms. Norman from interfering with the probate of the Dan Capel Estate in Pennsylvania. This injunction necessarily includes a finding that Ms. Capel has established a likelihood of success on the merits. *See A.E.P. Industries, Inc. v. McClure*, 308 N.C. 393, 401(1983) (“The first stage of the inquiry is, therefore, whether plaintiff is able to show likelihood of success on the merits.”); Motion to Dismiss, Ex. E.

Plaintiffs' argument that their causes of action seek to enforce the Separation Agreement is based on a mischaracterization of the Complaint, the Separation Agreement and the law. After being dismissed once in federal court for lack of personal jurisdiction, refusing their opportunity to litigate the probate of Dan Capel's Will in Orphans' Court, and being preliminarily enjoined in the North Carolina action, Plaintiffs are seeking to leverage their formidable (and free) legal resources to force Ms. Capel to defend another frivolous lawsuit in federal court, apparently for no other purpose than to engage her attorneys in multiple battles and burden her limited financial resources. *See Plaintiffs' Motion for Extension of Time to File*, DKT # 13, ¶ 1 (identifying themselves as *pro bono* counsel). Fortunately for Ms. Capel, the law is designed to prevent this type of unduly burdensome and harassing litigation and requires that the Complaint be dismissed.

**B.    Plaintiffs' Reliance on *Marbury v. Madison* Cannot Overcome the Requirement That the Estate Can Only Bring Suit Through its Authorized Representative and is Not a Proper Party Here.**

Plaintiffs concede that they do not have the authority to represent the Estate of Dan Capel. Pls. Br. at 19 – 20. They argue that notwithstanding the law governing this issue, they should be allowed to represent the Estate because Ms. Capel, as Executrix, has a conflict raising her own alleged breach of the Separation Agreement and therefore, Plaintiffs have no remedy. Pls. Br. at 20. Plaintiffs have no remedy because they intentionally waived it: Pennsylvania law provided them with a year to appeal the appointment of Ms. Capel as the Executrix of the Estate, but, despite their vast legal resources, Plaintiffs never availed themselves of this opportunity. *See* 20 Pa.C.S. § 908 ("Any party in interest seeking to challenge the probate of a will … may appeal therefrom to the court within one year of the decree … .").

How did Plaintiffs spend that year? Dan Capel's Will was admitted to probate on June 6, 2016. Motion to Dismiss, Exhibit C. Harrison Capel was provided notice of probate on July 21, 2016. *Id.* at Exhibit B. On August 11, 2016, rather than appealing the will's probate in Orphans' Court, a court with the appropriate expertise in handling Will contests, Plaintiffs filed a federal action in the District of Columbia. *See Capel v. Capel,* 16-CV-01636, DKT #1. A motion to dismiss was filed in that case on November 15, 2016 and was fully briefed by December 20, 2016. *Id.* at DKT #11, 15. While the parties waited for the court's decision on the motion, Plaintiffs took no action to preserve their rights to appeal in Orphans' Court. They have waived their appropriate remedy and cannot now rely on ancient and inapplicable Supreme Court precedent to save them.

We note that Plaintiff Brooke Norman now asserts that she and Dan Capel did not seek a change in the will "because the purported executrix had waived her right as executrix and heir." Pls. Br. At 6, ¶10. These facts are not alleged anywhere in the Complaint, including the paragraphs

cited to in Plaintiffs' Brief and it strains credulity to think that two well-educated adults would rely on the interpretation of a Separation Agreement when a new will could have been so easily drafted. However, if the Separation Agreement did include such a waiver, which is a legal conclusion disputed by Ms. Capel, the easiest course of action would have been to present this waiver to the Orphans' Court within a year of the probate of the will. Plaintiffs failed to do this because no such waiver exists, no later will exists and Ms. Capel is the rightful and legal representative of Dan Capel's estate.

Because the "Estate of Dan Capel" is not properly represented here, it has no standing to proceed and all counts brought on its behalf, including I, II, V, and VIII must be dismissed, pursuant to 12(b)(1).

### C. Plaintiffs Fail to State a Cause of Action for Conversion and Count I Must Be Dismissed.

Plaintiffs' Response fails to rebut Defendant's argument that they have not alleged the elements of conversion: the "deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *McKeeman v. Corestates Bank, N.A.*, 2000 Pa. Super. 117, 751 A.2d 655, 659 n.3 (Pa. Super. 2000) (internal quotation marks and citations omitted). Instead, Plaintiffs argue that they have satisfied the standards of notice pleading, pursuant to Fed. R. Civ. Pr. Rule 8, by claiming that Defendant is acting as an executrix who "exercises control over those funds to the exclusion of other family members." Pls. Br. At 9. This argument is self-defeating – an executrix exercises control through a court order, under the supervision of a court, and therefore, with "lawful justification."

Plaintiffs allege that Ms. Capel "called several government agencies seeking survivor and other benefits" and later allege that "upon information and belief, Defendant has...obtained certain

of these benefits belonging to Plaintiffs." Complaint at ¶102, 147. Applying the lessons of *Twombly* and *Iqbal* and considering the fact that the Separation Agreement provides Ms. Capel with life insurance and survivor benefits, these statements do nothing more than establish a mere possibility of conversion. Further, Plaintiffs Brooke Norman and Harrison Capel do not identify with any plausibility a) what other benefits exist; b) what Plaintiffs' basis is for claiming a right to possess those benefits; or c) how Ms. Capel wrongly obtained those benefits.[4]

Dan Capel's estate has been established in Lycoming County, Pennsylvania with no objection by Plaintiffs. All personal and real property formerly belonging to Dan Capel properly belongs to the Estate until it is distributed to the beneficiaries of the Estate. Harrison Capel and Brooke Norman cannot own or have a right of possession of Dan Capel's property and their cause of action for conversion must be dismissed.

**D.** **Plaintiffs Fail to State A Cause of Action for Interference with Prospective Economic Advantage.**

In their response, Plaintiffs, either intentionally or mistakenly, attempt to reframe this claim as one concerning *existing* and not prospective contractual benefits. Plaintiffs argue, without citation to the paragraphs in the Complaint, that they have alleged "… that Plaintiffs had a contractual right under Dan Capel's various life insurance policies, survivor benefits, and other end-of-life contracts." Pls. Br. at 10. The Complaint does not state: what these policies, benefits or contracts are; on what basis Plaintiffs claim entitlement to them; or how Defendant interfered. Plaintiffs then argue that "(b)ecause there is a prospective contract at issue (indeed multiple ones) and Defendant took affirmative steps to interfere with these contracts, the motion to dismiss fails."

_____

[4] As stated above, Plaintiff Estate of Dan Capel does not exist and must be dismissed from the Complaint. *Supra* at 6 - 8.

*Id.* In short, Plaintiffs allege that they may have some rights to something that Defendant may have interfered with somehow. This is exactly the type of suit that a 12(b)(6) motion is intended to prevent. *See Wagner v. Holtzapple*, 101 F. Supp. 3d 462, 468 (M.D. Pa. 2015) ("A complaint that 'pleads facts that are 'merely consistent with' a defendant's liability,' cannot make the leap from possibility to plausibility.") This Count should be dismissed.

E. **As a Matter of Law, Plaintiffs Cannot Prove Either Common Law Fraud or False Misrepresentations; Counts III and V Must be Dismissed.**

Plaintiffs now argue that this is a lawsuit to enforce a Separation Agreement. Pls. Br. at 1. However, the Separation Agreement itself provides Defendant Capel with all the benefits Plaintiffs have accused her of wrongfully trying to obtain, and, as Plaintiffs point out, any benefits Ms. Capel received pursuant to this Agreement were not conditioned on her obtaining a divorce. *See Id.* ("Lest there be any doubt that the existence (or non-existence) of a <u>divorce has no impact whatsoever on the Defendant's rights, duties and liability</u>, the Separation Agreement itself provides the following: This Agreement shall not be merged in [a divorce] Decree, but shall <u>in all respects survive the same and be forever binding and conclusive on all the parties</u>.") (Emphasis supplied.)

Plaintiffs argue that "Defendant engaged in actionable misconduct … by lying about her <u>separated status</u>. Pls. Br. at 1, (Emphasis in original.) It is difficult to glean Plaintiffs' meaning here but we turn to the numbered paragraphs on pages 6 and 7 of Plaintiffs' Brief for elucidation:

- First, Plaintiffs allege that the Separation Agreement prohibited Ms. Capel from asserting "any legal rights that would normally be associated with marriage." Pls. Br. at 6, ¶3, *citing* to Complaint, Ex. A. This is incorrect, *see, supra* at 3 – 4.

- Plaintiffs allege that Ms. Capel "had no intention of abiding by these terms." Pls. Br. at 6, ¶5. Again, Plaintiffs' description of the "terms" is inaccurate. Also,

Plaintiffs rely here on ¶¶ 191 – 94, which are found in Count VII. This Count alleges a non-existent cause of action, Equitable Estoppel, which Plaintiffs have not even attempted to support in their Opposition. *See* Motion to Dismiss at 14. The Court should not consider any of the allegations in this Count when it applies the 12(b)(6) standard to the Complaint.

- Plaintiffs allege that Ms. Capel "represented that she would not—among other things— 'molest' Dan Capel or interfere, exert authority, contact and control over him and forever treat him as though they were 'single and unmarried.'" Pls. Br. at 7, ¶¶ 7 and 8. The complete language of the Separation Agreement is this:

  - It shall be lawful for each party at all times hereinafter to live separate and apart from the other at such place or places as he or she may from time to time choose or deem fit, and each party shall be free from interference, authority, contact and control, direct or indirect, by the other as fully as if he or she were single and unmarried, except as may be necessary to carry out the provisions of this Agreement. Neither shall molest the other nor compel or endeavor to compel the other to cohabitate or dwell with him or her." Complaint, Ex. A at p, 2, ¶1.

Plaintiffs argue, with no factual support, that Ms. Capel's agreement to this paragraph was a false misrepresentation made repeatedly to induce Plaintiff Norman to make payments pursuant to the Separation Agreement. However, Complaint paragraphs 157 – 163, cited to by Plaintiffs in support of this theory, allege that the false representations at issue related to Ms. Capel's marital status not her "separation status." Plaintiff appears to regret that she put Ms. Capel's statements about her marital status and the issue of the identity of the surviving spouse at the center of this suit; but she cannot now ignore her own pleading.

Moreover, since Ms. Capel's rights under the Separation Agreement were not affected by her marital status, Plaintiff Norman could not have been defrauded by either Ms. Capel's alleged silence or statements on this issue. "In order to state a claim for fraud, a plaintiff must plead

sufficient facts to support the following elements: (1) a representation; (2) which is material; (3) which was made falsely, either knowingly or recklessly; (4) with intent to mislead another into relying on it; (5) justifiable reliance; and (6) resulting injury." *Dempsey v. Bucknell Univ.*, 76 F. Supp. 3d 565, 584 (M.D. Pa. 2015) *citing Sewak v. Lockhart*, 699 A.2d 755, 759 (Pa. Super. Ct. 1997); *accord Bortz v. Noon*, 556 Pa. 489, 499 (1998). Given the clear language of the Separation Agreement that the obligations survived divorce, representations about marital status could not be material, justifiably relied on or the proximate cause of harm.[5]

Because Plaintiff have not alleged sufficient facts to support a material misrepresentation, justifiable reliance or a proximately caused harm, Counts III and V must be dismissed.

### F. Plaintiff Norman Fails to State a Claim Based on Negligent Misrepresentation and Count IV Must Be Dismissed.

Plaintiffs' Opposition again attempts to re-frame Plaintiff Norman's negligent misrepresentation claim into a claim not made in the Complaint-that Laura Capel entered into a contract she had no intention of honoring. Had such a claim been made in the Complaint, such a claim could only lie in affirmative fraud, not negligence. Plaintiffs' Complaint contains no factual basis for a duty on the part of Laura Capel to Brooke Norman, and as duty is a requirement of any claim lying in negligence, this claim must be dismissed.

### G. Plaintiff Norman Fails to State a Claim for Defamation or Defamation Per Se; Count VI Must be Dismissed.

Plaintiff apparently concedes that she has not plead "a specific monetary or out-of-pocket loss as a result of the defamation" in order to satisfy the "special harm" component of defamation

---

[5] As pointed out in the Motion to Dismiss, Plaintiff also fails to identify any fiduciary or other relationship of trust between her and Ms. Capel giving rise to a duty to speak. *See* Motion to Dismiss at 10. Plaintiff appears to concede this issue.

in Pennsylvania, as she fails to address the arguments raised in Defendant's Motion to Dismiss regarding this point. This alone supports dismissal of Plaintiff's defamation claim.

Turning to Plaintiff Norman's argument that she has plead sufficient facts to allege that Ms. Capel has imputed serious sexual misconduct on the part of Plaintiff Norman, nowhere in Plaintiff's Complaint is it alleged that Ms. Capel told anyone that Plaintiff Norman knew she was living with someone who was married to someone else. Further, none of the facts alleged in Plaintiff's Complaint relate that Ms. Capel imputed any kind of sexual misconduct, much less "serious" sexual misconduct to Ms. Norman. Plaintiff Norman's claim for defamation per se must also be dismissed.

      **H.**    **Count VII Alleging a Cause of Action in Equitable Estoppel Must be Dismissed.**

Plaintiff Brooke Norman failed to respond to Defendant's argument regarding her claim for "equitable estoppel," conceding that this claim should be dismissed.

      **I.**    **Plaintiff Norman Fails to State a Claim for Intentional Infliction of Emotional Distress And Count IX Must Be Dismissed.**

Plaintiff Norman attempts to equate Ms. Capel's asserting that she and Dan Capel were still married and that she was both executrix and beneficiary of his will with conduct previously found "outrageous" in Pennsylvania: killing someone, stealing the body, and burying it in a field (*Papieves v. Lawrence*, 263 A.2d 118 (1970)); telling someone they had a fatal disease when they did not (*Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir. 1979)); denying medical treatment in an emergency room and leaving the patient lying on the floor *(Hoffman v. Memorial Osteopathic Hospital*, 492 A.2d 1382 (1985)); having sexual contact with two young children and encouraging such activity between the children (*Commonwealth v. Balisteri*, 478 A.2d 5 (1984)); and initiating and maintaining a sexual relationship with one's psychiatric patient

suffering from borderline personality disorder and other problems stemming from childhood sexual abuse (*Corbett v. Morgenstern,*, 934 F.Supp. 680 (E.D. Pa. 1996)).

Plaintiff Norman's allegation that she "has developed physical problems" falls far short of the pleading standard sufficient to sustain causes of action for intentional infliction of emotional distress. Allegations such as "'symptoms of severe depression, nightmares, stress and anxiety, requiring psychological treatment, and . . . ongoing mental, physical, and emotional harm'" have been found to sufficiently state such claims. *Armstrong v. Paoli Memorial Hosp.*, 633 A.2d 605, 609 (Pa. Super. Ct. 1993) (*citing Love v. Cramer*, 606 A.2d 1175, 1179 (Pa. Super. Ct.), *app. denied*, 621 A.2d 580 (Pa. 1992)).

Plaintiff Norman fails to allege facts sufficient to support plausible "desperate and ultra-extreme conduct" on the part of Ms. Capel and any resultant physical injury, harm or illness resulting to Ms. Norman from such conduct. Her cause of action for Intentional Infliction of Emotional Distress should be dismissed.

## II.    THIS COURT SHOULD ABSTAIN OR STAY THE CASE PENDING THE DETERMINATION OF THE ISSUE OF THE IDENTITY OF THE SURVIVING SPOUSE IN NORTH CAROLINA.

Assuming any of Plaintiffs' causes of action survive Defendant's Rule 12 challenges, the Court should analyze the remaining causes of action (and remaining Plaintiffs) for the appropriateness of *Colorado River* abstention or stay, or for a stay pursuant to the Court's discretion. As discussed in the Motion to Dismiss, strict identity between parties and claims is not necessary for pending proceedings to be substantially similar, although that will be the most usual circumstance in which a court finds parallel proceedings to exist. *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 285 n. 8 (3d Cir. 2017). *Colorado River* abstention requires only "'substantially similar parties and claims.'" *Id.*

The *Colorado River* factors do, in fact, weigh in favor of dismissing the claims of Brooke Norman and Harrison Capel, or, as may be appropriate, staying the case pending the outcome of the North Carolina Superior Court action. Staying this matter prevents Ms. Capel from being forced to fight a battle on two fronts and is also a matter of judicial economy here: the dispositive issue of the identity of Dan Capel's surviving spouse will be determined in North Carolina and will have collateral effect here. *See* Motion to Dismiss at 25 – 26 (analyzing the dispositive effect of the fact of who the surviving spouse is on each Count of the Complaint.). A stay inures to the benefit of both the Court and Ms. Capel; a stay is also beneficial to Plaintiffs as it prevents an unnecessary expenditure of resources caused by litigating the same issues in both forums.

## <u>CONCLUSION</u>

Defendant respectfully requests that this Complaint be dismissed with prejudice or that, in the alternative, this litigation be stayed until the North Carolina litigation is complete.

Respectfully submitted,

*Ellen Brotman*

**BROTMAN LAW**
Ellen C. Brotman
PA ID #71775
One South Broad Street, Suite 1500
Philadelphia, PA 19107
Telephone: (215) 609-3247
ebrotman@ellenbrotmanlaw.com

*Counsel for Defendant*
*Laura Capel*

Jeremy B. Foltz, *pro hac vice*
NC Bar No. 48576
The Law Office of Jeremy Foltz,
PLLC
P.O. Box 25494
Winston-Salem, NC 27114
(336) 303-6788
jeremyfoltzlaw@gmail.com

*Counsel for Defendant*
*Laura Capel*

Dated: Dated: September 5, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of September 2018 the foregoing notice was served by

electronic filing on all counsel of record through the Court's ECF system.

s/ Ellen C. Brotman
Ellen C. Brotman, Esq.
PA Id. # 71775
Brotman Law
One South Broad Street
Suite 1500
Philadelphia, PA 19107
215-609-3247
ebrotman@ellenbrotmanlaw.com
*Counsel for Defendant*
*Laura Capel*